# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF VIRGINIA,
# HARRISONBURG DIVISION

**TRACI GUYNUP**          **Plaintiff,**

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

**NOV 2 4 2020**

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

**v. CLARKE COUNTY, VIRGINIA**

CLARKE COUNTY SHERIFF CHIEF DEPUTY TRAVIS SUMPTION

**Defendants.**

## COMPLAINT TO RECOVER DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS AND PERSONAL INJURY

### JURISDICTION AND VENUE

Plaintiff brings this complaint under 42 U.S.C. Section 1983 for damages resulting from the Deprivation of Civil Rights, Unfair Practices inflicted upon Plaintiff by Defendants. The court has jurisdiction of this action (28 U.S.C. Sec. 1343) and of the parties. Venue is proper in this judicial district as the incident complained of occurred in this district. The basis for federal court jurisdiction is the case is a Federal Question.

Plaintiff alleges as follows:

**PARTIES**

Plaintiff Traci Guynup is an individual who is a resident
of Clarke County, Commonwealth of Virginia.

540 409-6788

405 HERMITAGE BOULEVARD BERRYVILLE, VIRGINIA 22611

**CLARKE COUNTY**

**101 Chalmers Court**

**Suite B**

**Berryville, VA 22611**

**Phone: (540) 955 5100**

**Defendant CLARKE County is a county in the Commonwealth of Virginia.**

**CLARKE COUNTY SHERIFF CHIEF DEPUTY TRAVIS SUMPTION**
100 N. Church St.
Berryville, VA 22611

**Phone: (540) 955 5152**

**Defendant Sumption is a law enforcement officer for the Clarke County**

**Sheriff's Department. Defendant was acting under color of law and in the**

**course and scope of his employment as a law enforcement officer with the**

**Clarke County Sheriff's Department at all times material.**

# FACTUAL BACKGROUND

### Events prior to June 2, 2020:

6. Plaintiff, Traci Guynup, receives $869/month from Social Security Disability.

7. Plaintiff receives EBT/SNAP benefits.

8. On February 2, 2020, Ms. Giacomangeli and Traci Guynup entered into an oral lease agreement for the property at 105 Bishop Meade Road.

9. Included in the lease were a car, tractor, tiller and zero-turn mower for use by the Plaintiff; and real property: a cottage, barn, she shed, chicken shed and an acre located at 105 Bishop Meade Road.

10.    Between October 2019 and June 2, Plaintiff was given keys and access codes to the main house, cottage, barn, Post Office Box, tractor and zero-turn mower.

11.    Plaintiff slept in the bedroom, showered in the bathroom, cooked in the kitchen, stored food in the refrigerator, kept a change of clothes in the closet, and received mail at 105 Bishop Meade Road.

12.    From February 2, 2020 until June 25, 2020, Traci Guynup entered the property at 105 Bishop Meade Road every day, seven days a week, for eight or more hours a day for the purpose of farming.

13.    Ms. Giacomangeli resides in Ashburn, Virginia.

14.    Ms. Giacomangeli worked full-time in Reston from October 2019 through June 2020.

15.    In addition to working full-time, Ms. Giacomangeli manages International Marble, Granite & Tile, Inc. for her husband, Ali El-Khatib.

16.    In addition to working full-time and managing a business, Ms. Giacomangeli operates a 5-Bedroom AirBNB, Blue Hill at 105 Bishop Meade Road.

17.    Ms. Giacomangeli has stated that neither she nor her husband are farmers.

18.   From February 2, 2020 thru June 25, 2020, Ms. Giacomangeli visited the farm occasionally on Sunday afternoons.

19. Ms. Guynup is not now nor has ever been an employee of Ms. Giacomangeli nor Blue Hill, LLC.

20. Plaintiff had submitted her driver's license and driving record to Ms. Giacomangeli in April 2020 for the purpose of being added as an authorized user on the insurance policy for the 2006 Lexus.

21. Plaintiff was an authorized user on the insurance policy for the 2006 Lexus from May 2020 onwards to the Plaintiff's knowledge.

22. Plaintiff had written confirmation of the use of the 2006 Lexus. The Lexus was to be added to the three-year lease. There were no stipulations on the use of the Lexus. Ms. Giacomangeli had encouraged the Plaintiff to use the Lexus for transportation for the CSA, but as the air-conditioning did not function, this was not suitable.

23. Ms. Giacomangeli had valued the Lexus at $500.

## Events prior to June 25, 2020:

24. On June 2, 2020, Ms. Giacomangeli and Traci Guynup signed a written 3-year lease for the property at 105 Bishop Meade Road.

25. The rent for the cottage, barn, tractor, zero-turn mower, poultry enclosure, 12 raised beds, lower field and everything contained in the written lease was agreed by both parties to be $7,500/year.

26. The Plaintiff's work from February thru June was accepted as payment as rent by Ms. Giacomangeli when she signed the lease on June 2, 2020.

27. In addition, Ms. Giacomangeli would pay the Plaintiff $115/week during the entirety of the 3-year lease for the Plaintiff's continued work on the farm. This was agreed by both parties on June 2 when they signed the lease.

28. Included in the lease was much food (a refrigerator filled with food, a quarter-acre garden with

vegetables that were ripe, several dozen eggs, and honey).

29. On or about June 2, 2020, Ms. Guynup applied for a Clarke County business license to operate Poverty Hollow CSA (Community Supported Agriculture) farm at 105 Bishop Meade Road.

30. On or about June 8, 2020, Ms. Guynup paid $100 to the Virginia State Corporation Commission for Poverty Hollow CSA Limited Liability Company - Articles of Incorporation.

31. On or about June 8, 2020, Ms. Giacomangeli, Mr. El-Khatib and their employees began a kitchen remodel of the leased premises.

32. On or about June 8, 2020, Ms. Giacomangeli and others began a constructive eviction of the Plaintiff.

33. On or about June 8, 2020, Ms. Giacomangeli and others entered the leased premises and moved the Plaintiff's belongings without Plaintiff's permission.

34. On or about June 8, 2020, Ali El-Khatib and his employees knocked down the kitchen exterior-wall of the leased premises.

35. Because of the dust and the flies, the Plaintiff was unable to bake for the CSA on June 11, 18th, and 25th.

36. Because of the dust, flies, outside wall being removed and Plaintiff's belongings being moved, Plaintiff was unable to prepare the bins for the CSA on June 11th, 18th and 25th.

37. Because the Plaintiff could not sell the perishable food, she contacted four local food banks: FISH, Duncan Memorial United Methodist Church Backpack Lunch program, Knights of Columbus Soup Kitchen, and Stephens City United Methodist Church. The Plaintiff arranged for gleaners to assist with harvesting and transporting the food. There was enough food in the lower field to feed 12 families for an entire year.

38. Mr. El-Khatib's two employees built a wall and installed two windows and a door to the outside. They used power-saws in the kitchen. The Plaintiff was unable to work in the cottage because of the noise and sawdust.

39. Plaintiff met ALL her obligations for the lease through June 25, 2020.

## June 25, 2020 -June 27, 2020 CONSTRUCTIVE SELF-HELP EVICTION

40. On or about June 25, 2020, Ms. Giacomangeli continued to constructively evict the Plaintiff.

41. Ms. Giacomangeli followed the Plaintiff around the leased property.

42. Ms. Giacomangeli would not cease verbally harassing the Plaintiff.

43. Even though the Plaintiff was not an employee of Ms. Giacomangeli nor Blue Hill, Ms. Giacomangeli demanded that the Plaintiff perform certain tasks immediately or she would "cancel the lease".

44. On June 25, Ms. Giacomangeli had NOT paid the Plaintiff for all her work from February 2 through June 25.

45. None of these demands were in the lease, nor the responsibility of the Plaintiff.

46. Ms. Giacomangeli and her employees caused the Plaintiff much work by moving Plaintiff's private business papers and other belongings.

47. Ms. Giacomangeli and her employees caused the Plaintiff much work by tossing large branches and Johnson grass with seed heads in the Aerobin compost bin. The Plaintiff had already sorted the compost bin on two occasions and had removed debris placed by Ms. Giacomangeli and her employees. This meant emptying the entire bin with a shovel and sorting through the compost by hand. This took at least an hour; and was unpleasant.

48. On June 25, the Plaintiff left 105 Bishop Meade Road because of the verbal harassment of Ms. Giacomangeli.

49. Plaintiff requested Ms. Giacomangeli provide her with contact information for Ms. Giacomangeli's attorney.

50. Plaintiff had $15,000 in fair market value of property covered in the lease at 105 Bishop Meade Road.

51. Plaintiff drove the 2006 Lexus with 305,000 miles on the odometer to her home.

52. Plaintiff's e-bicycle was left at 105 Bishop Meade Road in the barn. The Ecotric bike is worth

$1,000. The Plaintiff had purchased the e-bike in October 2019 for the commute from Berryville to Boyce, a 15-mile round-trip along Rt. 340. The Plaintiff rode her bike in the sleet, snow, & thunderstorms every day from February to June 25.

53. Ms. Giacomangeli insisted that the 2006 Lexus could be used to transport fruits and vegetables to farmer's markets; but the air conditioning did not work in the 2006 Lexus and it was unsuitable for transporting perishable food.

54. Ms. Giacomangeli continued to harass the Plaintiff making demands on the Plaintiff's time by texting the Plaintiff unceasingly for three days from 6:15 a.m. until after 9 p.m.

55. On or about June 27, 2020, Ms. Giacomangeli texted the Plaintiff that she was removing the Plaintiff's personal property from the leased premises at 105 Bishop Meade Road.

56. On or about June 27, 2020 at approximately 3:00 pm, Carla Giacomangeli took empty seed packets and the Plaintiff's private business papers and threw them on the curb at 405 Hermitage Boulevard in the presence of four witnesses: Traci Guynup, Keith Tondrick, Leslie Anne Pearce, and Marleen Nasri.

57. At 3:00 pm it was 90 F outside.

58. Plaintiff did not want to engage Ms. Giacomangeli in an altercation on the lawn at 405 Hermitage Boulevard.

59. Ms. Giacomangeli refused to give the Plaintiff the contact information for her attorney.

60. Plaintiff contacted the Dispatch at the non-emergency number 540 955-1234 and requested to speak with a Clarke County Deputy.

61. Plaintiff alleged that Ms. Giacomangeli had removed the property illegally from 105 Bishop Meade Road.

62. In a series of four phone calls, Officer Shoremount with the Berryville Police Department stated that the entire matter was "civil" and would need to be handled in civil court.

63. Officer Shoremount stated that all the Clarke County deputies were "busy" and none of them

could respond to the Plaintiff's call for service from 3 p.m. until 7 p.m..

## June 27, 2020, Search, Seizure, Warrantless Detention and Eviction

64. At around 1915 on June 27, 2020, Clarke County Communications Specialist Richard Hammonds received a recorded phone call from Ms. Giacomangeli alleging "unauthorized use."

65. Ms. Giacomangeli stated in a recorded conversation that "she called earlier in the day; but the car had not been returned."

66. Defendant Hammonds acknowledges that there was an earlier call, and questions Ms. Giacomangeli about her address of "105 Bishop Meade Road."

67. At around 1916 on June 27, 2020, Defendant Hammonds commented "Complainant is calling back from earlier related call and still does not have her car back. Call complainant."

68. At around 1918 on June 27, 2020, Defendant Hammonds dispatched Chief Deputy Sumption to 105 Bishop Meade Road for an "unauthorized use."

69. At around 1934 on June 27, 2020, Defendant Sumption arrived at 105 Bishop Meade Road.

70. At around 1949 on June 27, 2020, Deputy Ermerins stated "REPORT TAKEN" and Assigned When "06/27/2020".

71. Deputy Sumption completed the written report listing Carla Giacomangeli as the victim, The event "Unauthorized use of a vehicle" Code no "240" between 06 27 2020 19:15 and 06 27 2020 19:16.

72. Deputy Sumption incorrectly reports the 105 Bishop Meade Road as Ms. Giacomangeli's Type Location "20 – Residence/Home" Neither Ms. Giacomangeli nor her family reside at 105 Bishop Meade Road. They operate it as an AirBNB. There were up to sixteen guests at a time from October 2019 through June 2020. In addition, Ms. Giacomangeli would bring friends and family on Sunday afternoons once the AirBNB was vacated. And Ms. Giacomangeli had three full-time employees and seven part-time employees that were responsible for cleaning the house and grounds and all the property maintenance

73. Deputy Sumption reported the accused suspect as "Guynup, Traci Mikell".

74. Deputy Sumption states that "I inquired of Giacomangely if she wanted to file unauthorized use charges against Guynup. Giacomangely advised that she had no other choice and wanted the vehicle back.

Further Giacomangely advised she would also like to get a trespass notice served on Guynup to prevent her from coming back on the property."

75. Deputy Sumption began a search for Traci Guynup without an arrest warrant.

76. Deputy Sumption began a search for the 2006 Lexus without any search warrants.

77. Deputy Sumption was only given the "second house on the right" as the address.

78. Deputy Sumption then drove straight to 405 Hermitage Boulevard.

79. Deputy Sumption failed to communicate to Dispatch and to the Berryville Police Department that the car was "stolen."

80. Although neither the Plaintiff nor Lexus were visible from the street, on June 27 at 20:13, Deputy Sumption drove onto the driveway at 405 Hermitage Boulevard.

81. On June 27, 2020 at 20:13, Deputy Sumption began a search of the property at 405 Hermitage Boulevard without permission from Plaintiff or from the property owner.

82. Deputy Sumption began a search for the Plaintiff without probable cause.

83. Deputy Sumption began a search for the Plaintiff without an arrest warrant.

84. Deputy Sumption knocked on the front door to 405 Hermitage Boulevard and accused Marleen Nasri of 'stealing the car'.

85. Ms. Nasri was terrified.

86. Ms. Nasri did not sleep for three nights following this incident.

87. Deputy Sumption accused Ms. Nasri of hiding the "stolen" car in the garage.

88. Deputy Sumption failed to explain any of the repercussions of consenting to a search of the garage at 405 Hermitage Boulevard.

89. Specifically, Deputy Sumption failed to inform Ms. Nasri that she could be found guilty of a felony as an accomplice.

90. Deputy Sumption performed a search of Ms. Nasri and the interior of 405 Hermitage Boulevard.

91. Deputy Sumption directed Ms. Nasri to open the garage and performed a search of the interior of the garage of 405 Hermitage Boulevard.

92. Following all these searches, Deputy Sumption requested Berryville Police Officer Voorhees come to 405 Hermitage for the purpose of recording and filming the Plaintiff "due to complaints that Guynup made against staff in the past."

93. Deputy Sumption continued his search for Ms. Guynup by demanding that Ms. Nasri disclose the location of the Plaintiff.

94. Deputy Sumption stated to Ms. Nasri that "Traci" had "stolen" a car.

95. There was no arrest warrant. Plaintiff was unaware of the charges of "unauthorized use."

96. The Plaintiff came from the back door in the basement around to the front of 405 Hermitage.

97. Neither Deputy Sumption nor Officer Voorhees had their lights flashing or their sirens going.

98. Deputy Sumption had not issued a BOLO for either Ms. Guynup or the 2006 Lexus.

99. Deputy Sumption did not communicate to Officer Voorhees that he was looking for a "stolen 2006 Lexus".

100. On June 27, 2020 at 20:27, Officer Voorhees arrived; and walked up the driveway towards Deputy Sumption.

101. At 20:27, the 2006 Lexus was not visible from the street.

102. Nothing "stolen" was found in any searches by Deputy Sumption and Officer Voorhees.

103. Deputy Sumption did not tell the Plaintiff that she would be filmed.

104. Deputy Sumption did not state that Officer Voorhees was there as an observer.

105. For this reason, the Plaintiff believed that Officer Voorhees was involved of the arrest of the Plaintiff.

106. At 20:27, Officer Voorhees recorded Deputy Sumption accusing the Plaintiff of Unauthorized Use.

107. At 20:27, Deputy Sumption arrested the Plaintiff by physically blocking her from leaving.

108. At 20:27, both Deputy Sumption and Officer Voorhees blocked the Plaintiff's egress.

109.   On the video at 20:30, the Plaintiff <u>objected to Deputy Sumption and Officer Voorhees following her.</u>

110.   At 20:30, Deputy Sumption stated to the Plaintiff that Officer Voorhees was necessary because of the Plaintiff's gender.

111.   At 20:30, Deputy Sumption and Officer Voorhees completed a visual search of the Plaintiff for weapons.

112.   Deputy Sumption and Officer Voorhees continued their search of the property at 405 Hermitage Boulevard without probable cause.

113.   Deputy Sumption and Officer Voorhees continued their search of the property at 405 Hermitage Boulevard without a search warrant.

114.   Deputy Sumption and Officer Voorhees continued their  search of the property at 405 Hermitage Boulevard without an arrest warrant.

115.   Neither the Berryville Police Department nor the Clarke County Sheriff's Department had obtained any allegations in writing.

116.   Plaintiff objected to all the searches.

117.   Plaintiff objected to the seizure of her person.

118.   Plaintiff objected to warrantless detention.

119.   Deputy Sumption and Officer Voorhees entered the basement against the Plaintiff's objections.

120.   Deputy Sumption and Officer Voorhees performed a search of the basement of 405 Hermitage Boulevard against the Plaintiff's objections.

121.   Deputy Sumption assaulted the Plaintiff, putting her in fear of her life by accusing her of a "felony of unauthorized use."

122.    Deputy Sumption threatened to put handcuffs on the Plaintiff.

123.    Deputy Sumption threatened to bring the Plaintiff to the Adult Detention
Center in Winchester, Virginia.

124.    The Plaintiff was unable to get an attorney after 7:30 p.m. on a Saturday
evening.

125.    Deputy Sumption did not inform the Plaintiff of her rights to an attorney.

126.    Deputy Sumption aggressively verbally assaulted the Plaintiff – repeatedly
demanding the key and the car.

127.    Deputy Sumption refused to listen to the Plaintiff or discuss the situation in
a reasonable tone.

128.    The Plaintiff requested written proof of the allegations.

129.    Deputy Sumption refused to produce written information.

130.    Deputy Sumption stated that "Ms. Giacomangeli had terminated the
Plaintiff's employment."

131.    Deputy Sumption stated that "Ms. Giacomangeli had terminated the contract
with the Plaintiff."

132.    Plaintiff stated to Deputy Sumption that she had spoken with Officer
Shoremount four times that afternoon.

133.    Plaintiff stated to Deputy Sumption that Officer Shoremount had stated it
was a "civil matter."

134.    Deputy Sumption stated that he "was not concerned with what had happened

<u>in previous shifts</u>."

135.   Deputy Sumption stated that "none of those officers were available."

136.   Deputy Sumption stated that "there was no record of any phone calls from the Plaintiff."

137.   Deputy Sumption falsely stated that "there was no record of Plaintiff's request for service."

138.   Plaintiff stated that she had a signed, <u>valid, written three-year</u> lease for the car.

139.   Plaintiff stated that she had <u>written authorization</u> to use the car.

140.   Plaintiff stated that she was an <u>authorized user on Ms. Giacomangeli's insurance policy</u>.

141.   Deputy Sumption continued to detain the Plaintiff.

142.   Deputy Sumption ignored all the Plaintiff's statements of innocence.

143.   Deputy Sumption continued to scream at the Plaintiff to give him the key and the location of the car.

144.   Deputy Sumption seized the key to the Lexus.

145.   Deputy Sumption told the Plaintiff "not to move from the residence at 405 Hermitage Boulevard" in the presence of Officer Voorhees and while she was being filmed <u>in her private apartment</u>.

146.   Deputy Sumption seized the 2006 Lexus.

147.   Deputy Sumption searched the 2006 Lexus without the Plaintiff being

present.

148.   Plaintiff texted a copy of the <u>signed three-year lease</u> to Deputy Sumption.

149.   Deputy Sumption knew that he had arrested and detained the Plaintiff because

he served her with a no trespass notice from Ms. Giacomangeli in writing.

150.   Deputy Sumption <u>evicted the Plaintiff by force</u> from 105 Bishop Meade

Road.

151.   Deputy Sumption illegally evicted/dispossessed the Plaintiff of the vehicle

and $15,000 in fair market value of property at 105 Bishop Meade Road.

152.   Deputy Sumption illegally evicted the Plaintiff without a court order.

153.   Deputy Sumption served the Plaintiff the no trespass notice from Ms.

Giacomangeli.

154.   Plaintiff is suffering financial and emotional distress from the loss of her

business, Poverty Hollow CSA.

155.   Plaintiff is suffering financial and emotional distress from the loss of her 33

chickens and 4 pet ducklings.

156.   Plaintiff is suffering financial and emotional distress from the loss of three

hives of bees.

157.   Plaintiff has suffered and continues to suffer financial and emotional

distress from the loss of the one acre of perishable produce.

158.   Plaintiff is suffering anxiety attacks since June 27, 2020 during which she

cannot breathe.

159.   Plaintiff is suffering recurring nightmares since June 27, 2020.

160.   Plaintiff is suffering flashbacks several times a day since June 27, 2020.

161.   Plaintiff is having difficulty in performing daily tasks like shopping, cooking
since June 27, 2020.

# COUNT I UNREASONABLE
# SEARCH FOR PLAINTIFF

162.         Plaintiff incorporates the preceding paragraphs by reference herein.

163.         Defendant officers did not obtain an arrest warrant to search for the
Plaintiff.

164.   Defendant Sumption searched 405 Hermitage Boulevard for the Plaintiff
without probable cause and without Plaintiff's permission.

165.   Defendant Sumption lacked probable cause to order Marleen Nasri to open
her garage and house for a search.

34. Defendant Sumption's acts were objectively unreasonable.

35. Defendant Sumption's acts violated Plaintiff's Fourth Amendment
rights to be secure in his person from unreasonable search and seizures.

36. Defendant Sumption's deprivation of Plaintiff's rights caused Plaintiff damages.

37. Defendant Sumption acted willfully, knowingly and purposefully
and/or with deliberate indifference to deprive Plaintiff of her
Constitutional Rights. As a result of the nature of Defendant's conduct,
Plaintiff is entitled to recover punitive damages against the individual

Defendant.

# COUNT II UNREASONABLE SEARCH OF 405 HERMITAGE BOULEVARD

116.    Defendant officers lacked probable cause to search 405 Hermitage Boulevard.

117.    Defendant officers did not obtain a warrant to search 405 Hermitage Boulevard.

118.    Defendant officers deprived Plaintiff of her Fourth Amendment rights to be secure in her person by searching 405 Hermitage Boulevard.

119.    The search of 405 Hermitage Boulevard was wrongful, without probable cause and deprived Plaintiff of her Fourth Amendment right to be free of unreasonable seizures.

120.    The actions of Defendant officers proximately caused damages to Plaintiff in loss of liberty, embarrassment, humiliation, pain and suffering and mental and emotional distress.

121.    Defendant officers acted willfully, purposefully, and/or with deliberate indifference to deprive the Plaintiff of her Constitutional Rights. As a result of the nature of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

122.    The actions of the Defendant officers were the result of either a lack of supervision or a de facto policy of failing to comply with Fourth Amendment Standards on the part of Clarke County.

# COUNT II UNREASONABLE SEARCH, SEIZURE OF PLAINTIFF,    JUNE 27,2020

**(Against ALL Defendants)**

86. Defendant Sumption lacked probable cause to detain Plaintiff while he searched for the 2006 Lexus.

87. Defendant Sumption lacked probable cause to detain Plaintiff for an unreasonable amount of time.

88. Defendant Sumption lacked probable cause to interrogate Plaintiff.

89. Defendant Sumption lacked probable cause to seize and search the Plaintiff.

90. Defendant Sumption lacked probable cause to seize the Plaintiff's key to the 2006 Lexus.

91. Defendant Sumption lacked probable cause to seize and search the Plaintiff's vehicle.

92. Defendant Sumption's acts were objectively unreasonable.

93. Defendant Sumption's acts were outrageous.

94. Defendant Sumption's acts violated Plaintiff's Fourth Amendment rights to be secure in her person from unreasonable search and seizures.

95. Defendant Sumption was horribly biased against the Plaintiff.

96. Defendant Sumption ignored the written three-year lease.

97. Defendant Sumption ignored the written permission from Ms. Giacomangeli.

98. Defendant Sumption ignored all verbal communication from the Plaintiff.

99. Defendant Sumption was so biased against the Plaintiff that he ignored Plaintiff's emails

containing the lease, written authorization to use the car, and notification that Plaintiff was an

authorized user on the insurance policy.

100. Defendant Sumption was so biased against the Plaintiff that he refused to let her speak

except to tell him the location of the car.

101. Defendant Sumption was so biased against the Plaintiff that he took the time to email a

no trespass form to Ms. Giacomangeli.

102. Defendant Sumption was so biased against the Plaintiff that he took the time to obtain

a signed no trespass notice in writing from Ms. Giacomangeli

103. Defendant Sumption was so biased against the Plaintiff, he blatantly refused to get a

written, sworn and under oath statement from Ms. Giacomangeli.

104. Defendant Sumption was so biased against the Defendant he did not obtain a search warrant.

105. Defendant Sumption was so biased against the Defendant he did not obtain an arrest warrant.

106. Defendant Sumption was so biased against the Defendant he evicted her without a court
order.

107. Because of Defendant Sumption's bias against the Plaintiff, he caused the

Plaintiff's loss of $115/week income for three years.

108. Because of Defendant Sumption's bias against the Plaintiff, he illegally evicted the

Plaintiff from 105 Bishop Meade Road.

109. Because of Defendant Sumption's bias against the Plaintiff, he caused the loss of the

leased vehicle for three years.

110. Because of Defendant Sumption's bias against the Plaintiff, he caused the

Plaintiff to lose $25,000 of perishable food.

111. Defendant Sumption's deprivation of Plaintiff's rights caused Plaintiff damages.

112. Defendant Sumption acted willfully, purposefully, and/or with deliberate indifference to

deprive Plaintiff of her Constitutional Rights. As a result of the nature of Defendant's conduct,

Plaintiff is entitled to recover punitive damages against the individual Defendant.

# COUNT III – UNREASONABLE SEARCH AND SEIZURE (JUNE 27, 2020)

(Against Defendant Clarke County and the Corresponding Police Officers)

Plaintiff incorporates the preceding paragraphs by reference herein.

113.    As a result of the search and seizure, Defendant officers held Plaintiff in custody from about 7 P.M. until 11 P.M.

114.    Defendant officers detained Plaintiff for such an unreasonable amount of time that Defendant officers

constructively placed Plaintiff under arrest.

115.    During this arrest, Plaintiff was driven around Clarke County Virginia making stops at 105 Bishop Meade Road and 405 Hermitage Boulevard.

116.    Defendant officers lacked probable cause to arrest Plaintiff.

117.    Defendant officers did not obtain a warrant to arrest Plaintiff.

118.    Defendant officers deprived Plaintiff of her Fourth Amendment rights to be secure in her person by arresting her.

119.    The arrest of Plaintiff was wrongful, without probable cause and deprived Plaintiff of her Fourth Amendment right to be free of unreasonable seizures.

120.    The actions of Defendant officers proximately caused damages to Plaintiff in loss of liberty, embarrassment, humiliation, pain and suffering and mental and emotional distress.

121.    Defendant officers acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive the Plaintiff of her Constitutional Rights. As a result of the nature of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

122.    The actions of the Defendant officers were the result of either a lack of supervision or a de facto policy of failing to comply with Fourth Amendment Standards on the part of Clarke County.

123.    Defendant Sumption knew, or should have known, that Defendant officers lacked probable cause to arrest Plaintiff Guynup.

124.    Because Defendant officers lacked the authority to arrest Plaintiff, the execution of the search was wrongful, without probable cause and deprived Plaintiff of her Fourth Amendment right to be free of unreasonable seizures.

125.    Defendant Sumption knew, or should have known, that the searches and seizures and evictions were illegal because there was no eviction order from a Judge.

126. Defendant Sumption knew, or should have known, that any seizure and eviction which is the product of such gross and outrageous violation of an individual's civil liberties would be facially invalid. The factual support for any probable cause that is so lacking that no reasonable police officer or prosecutor would believe that probable causes existed for a search, a seizure, an arrest, and an eviction.

127. Defendant Sumption knew or should have known, that the aforementioned circumstances are still insufficient to support a warrant for a search.

128. The execution of the searches, seizures, arrest and evictions regarding Plaintiff were wrongful, without probable cause and deprived Plaintiff of her Fourth Amendment right to be free of unreasonable seizures.

129. The actions of Defendants proximately caused damages to Plaintiff in loss of liberty, embarrassment, humiliation, pain, suffering, financial hardship, mental and emotional distress. 130. Defendants acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive the Plaintiff Guynup of her Constitutional Rights. As a result of the nature of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

# COUNT IV– MUNICIPAL LIABILITY AND VIOLATION OF DUE PROCESS

## (JUNE 27, 2020)

(Against ALL Defendants)

130. Plaintiff incorporates the preceding paragraphs by reference herein.

131. In practice, Clarke County has used their peace officers to bully, harass and deprive private citizens of their civil liberties.

132. The peace officers from each municipality have worked together and within each agency to promote this environment.

133. The municipal Defendants used their peace officers to interfere with Plaintiff's property interest and her liberty interests.

134. Defendant's conduct either in their individual acts or contribution caused Plaintiff to be deprived her source of income for the next three years.

135. Defendant's conduct either in their individual acts or contribution caused Plaintiff to be deprived of her source of food for the next three years.

136. Defendant's conduct either in their individual acts or contribution caused Plaintiff to be deprived of her private property.

137. Defendant's conduct either in their individual acts or contribution caused Plaintiff to be deprived of her business real property.

138. In addition to the obvious violations of Plaintiff's liberty interests, Defendants also deprived the Plaintiff contact with an attorney because the searches and seizures and detentions and arrests and evictions occurred outside of regular business hours late on a Saturday night.

139. The Defendants have ignored procedural and substantive Due Process requirements in an unlawful campaign to harass, punish and bully private citizens

despite an absence of probable cause and evidence.

140. The municipal Defendants have trained their officers to perform invasive searches and seizures, flouting constitutional requirements related to private property and liberty interests.

141. Defendants' actions intentionally and willfully deprived Plaintiff of her property interests and Plaintiff's liberty interests without due process of law and without recourse for the arbitrary, abusive, and criminal conduct of Defendants.

142. Defendants' actions proximately caused damages to Plaintiff as previously alleged. Defendants acted willfully, knowingly and/or purposefully, and with deliberate indifference to deprive Plaintiff of her constitutional rights.

# COUNT V - UNREASONABLE SEARCH AND

# SEIZURE OF VEHICLE (JUNE 27, 2020)

## (Against Defendant Clarke County and the Corresponding Police Officers)

(Against Defendant Clarke County and the Corresponding Police Officers)

Plaintiff incorporates the preceding paragraphs by reference herein.

143.    Defendant officers lacked probable cause to seize the 2006 Lexus.

144.    Defendant officers did not obtain a warrant to seize the 2006 Lexus.

145.    The seizure of the Lexus was wrongful, without probable cause and deprived Plaintiff of her Fourth Amendment right to be free of unreasonable seizures.

146.    The actions of Defendant officers proximately caused damages to Plaintiff in loss of liberty, embarrassment, humiliation, pain and suffering, and mental and emotional distress.

147.    Defendant officers acted willfully, knowingly, and purposefully and/or with <u>deliberate indifference</u> to deprive the Plaintiff of her Constitutional Rights. As a result of the nature of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

148.    The actions of Chief Deputy Sumption were the result of a de facto policy of failing to comply with Fourth Amendment Standards on the part of Clarke County.

149.    Defendant Chief Deputy Sumption knew, or should have known, that Defendant officers lacked probable cause to arrest Plaintiff Guynup.

150.    Because Defendant officers lacked the authority to arrest Plaintiff, the execution of the search was wrongful, without probable cause and deprived Plaintiff of her Fourth Amendment right to be free of unreasonable seizures.

151. Defendant Sumption knew, or should have known, that any seizure which is the product of such gross and outrageous violation of an individual's civil liberties would be facially invalid. The factual support for any probable cause that is so lacking that no reasonable police officer or prosecutor would believe that probable causes existed for a search, a seizure, an

arrest, and an eviction.

152. Defendant Sumption knew or should have known, that the circumstances are still
insufficient to support a warrant for a search.

153. The execution of the searches, seizures, and evictions regarding the Plaintiff were
wrongful, without probable cause and deprived Plaintiff of her Fourth Amendment right
to be free of unreasonable seizures.

154. The actions of Defendants proximately caused damages to Plaintiff in loss of liberty,
embarrassment, humiliation, pain, suffering, financial hardship, mental and emotional
distress.

155. Defendants acted willfully, purposefully and/or with deliberate indifference to deprive
the Plaintiff Guynup of her Constitutional Rights. As a result of the nature of Defendants'
conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

# COUNT V OBSTRUCTION OF JUSTICE

156. Chief Deputy Sumption has obstructed justice by outright refusing to obtain the Ms.
Giacomangeli's allegations in writing.

157. Chief Deputy Sumption has obstructed justice by refusing to obtain a copy of the insurance
policy for the 2006 Lexus for the dates of June 25 through June 27

158. Chief Deputy Sumption had received the emails of the SIGNED THREE-YEAR LEASE and
written permission to use the Lexus at 8:30 p.m. on June 27, 2020; yet he FALSIFIED his incident
report.

159. Chief Deputy Sumption has obstructed justice by not admitting the written permission and
lease as evidence.

160. Chief Deputy Sumption has obstructed justice by outright refusing to determine the veracity of
Ms. Giacomangeli's statements to him.

161. Chief Deputy Sumption has obstructed justice by evicting the Plaintiff without a court order.

162. Chief Deputy Sumption has obstructed justice by serving the Plaintiff with a No Trespass
Notice when no crime had been committed by Plaintiff; and there was a valid, signed three-year
lease in effect.

163. Chief Deputy Sumption has obstructed justice by not reporting the false statements of Ms. Giacomangeli.

164. Chief Deputy Sumption has obstructed justice by refusing to correct his incident report.

165. On October 22, 2020, Judge Tisinger ruled that the 3-year lease was an "employment contract" because of Chief Deputy Sumption's incident report.

166. Sheriff Roper and Chief Deputy Sumption have obstructed justice by refusing to correct the incident report.

167. Sheriff Roper and Chief Deputy Sumption have obstructed justice by refusing get Ms. Giacomangeli's statements in writing.

168. Sheriff Roper and Chief Deputy Sumption have obstructed justice by refusing to inform the Plaintiff why a Deputy was unable to respond to the Plaintiff's request for service for FOUR HOURS on June 27.

169. Sheriff Roper appeared at the Plaintiff's hearing on the civil matter on August 22. The Plaintiff does not know if the Sheriff has communicated or aided Ms. Giacomangeli.

170. Sheriff Roper's presence at the civil hearing made the Plaintiff uncomfortable and afraid.

## REQUEST FOR RELIEF

Plaintiff incorporates the preceding paragraphs

by reference herein. WHEREFORE, Plaintiff

seeks the following relief:

1. Actual and compensatory damages sufficient to make her whole. The Plaintiff has been unable to acquire any of her personal property because of the No Trespass Notice that Deputy Sumption served on the Plaintiff.
2. The Plaintiff has been unable to acquire her business inventory of $15,000 in perishable produce.

3. The Plaintiff has been unable to sell the $15,000 in perishable produce. All the plants have since been permitted to die of drought by Ms. Giacomangeli. All the produce was permitted to rot in the field by Ms. Giacomangeli.

4. The Plaintiff has not been informed of the condition of the eggs, honey, chickens, bees, worms, and ducks.

5. Ms. Giacomangeli has not paid the Plaintiff for all the work from February through June 25. The 3-year-lease was valued at $25,000.

6. Punitive damages against Defendants to punish them and to deter further wrongdoing.

7. Treble damages.

8. Injunctive relief sufficient to protect Plaintiff and her acquaintances from the ongoing harassment and intimidation of Defendants.

9. Litigation expenses, costs, pre- and post-judgment interest as provided by law.

10. and Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Traci Guynup, Pro Se
405 Hermitage Boulevard
Berryville, Virginia 22611
540 408-6788